UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**STEPHEN BRUCE VARGASAN**                                                          PLAINTIFF

v.                                                        CIVIL ACTION NO. 4:22-CV-P47-JHM

**MG FREESITES, LTD.** *et al.*                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* civil action brought by a prisoner pursuant to 42 U.S.C. § 1983. This matter is before the Court upon three motions filed by Plaintiff Stephen Bruce Vargasan (DNs 4, 8, & 10) and for screening of this action pursuant to 28 U.S.C. § 1915(e) since Plaintiff is proceeding *in forma pauperis*.

**I. MOTION TO APPOINT COUNSEL**

In the first motion before the Court, Plaintiff states that he seeks the appointment of counsel because he is incarcerated and unable to afford a lawyer; he has a complex case "that would require[] extent knowledge in the areas that I am suing for"; and because a lawyer could help him file motions and "gather the evidence needed to prove [his] case[]" (DN 4).

Appointment of counsel in a *civil* case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (emphasis added); *Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases."); *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004) ("[T]here is no right to counsel in prisoner civil rights cases."). Under 28 U.S.C. § 1915(e), "[t]he court *may* request an attorney to represent any person unable to afford counsel." § 1915(e)(1) (emphasis added). It is a matter "'within the discretion of the court,'" *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (quoting *United States v. Madden*, 352 F.2d 792, 793 (9th Cir. 1965)), and "'is a privilege that is justified only by exceptional circumstances.'"

*Lavado*, 992 F.2d at 606 (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "To determine whether these exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987)). "This generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Lavado*, 992 F.2d at 606 (quoting *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)).

The Court finds that the complexity of the issues in this case does not necessitate the appointment of counsel and a review of the documents filed by Plaintiff in this case reveals that he is sufficiently articulate and able to present his case to the Court. Moreover, Plaintiff does not show how his circumstances are different than other incarcerated plaintiffs. *See, e.g.*, *Stewart v. United States*, No. 2:13-cv-02896-STA-egb, 2017 U.S. Dist. LEXIS 31834, at *1 n.1 (W.D. Tenn. Mar. 7, 2017) (finding appointed counsel not warranted where the plaintiff maintain that "the issues in the case are 'too complex for him' and that he has 'extremely limited access to the law library,' is 'mentally ill,' 'does not have an education,' and has 'a limited knowledge of the law'. . . . Nothing distinguishes this case from the numerous other petitions filed by indigent prisoners and Petitioner has been able to proceed proficiently on his own at all stages of this litigation"); *Coates v. Kafczynski*, No. 2:05-CV-3, 2006 U.S. Dist. LEXIS8641, at *4 (W.D. Mich. Feb. 22, 2006) ("[T]here is nothing exceptional concerning [a prisoner's] incarceration or poverty that extraordinarily debilitates his ability to investigate crucial facts. These are ordinary and routine impediments incident to prisoner litigation.").

For these reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for the appointment of counsel (DN 4) is **DENIED**.

## II. MOTION TO AMEND COMPLAINT

Under Fed. R. Civ. P. 15(a)(1), a party may amend its pleading once as a matter of course within "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Because this action is before the Court for screening pursuant to § 1915A and no Defendant has been served, **IT IS HEREBY ORDERED** that Plaintiff's motion for leave to amend the complaint (DN 8) is **GRANTED**. The Court will screen the complaint and amended complaint below.

## III. MOTION TO PROCEED ANONYMOUSLY

The Court next turns to Plaintiff's motion to proceed anonymously (DN 10). "As a general matter, a complaint must state the names of all parties." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (citing Fed. R. Civ. P. 10(a)). "Under certain circumstances, . . . the district court may allow a plaintiff to proceed under a pseudonym by granting a protective order." *D.E. v. Doe*, 834 F.3d 723, 728 (6th Cir. 2016). "The burden is on the Plaintiff to demonstrate that the need for anonymity substantially outweighs both the presumption that a party's identity is public information and the risk of unfairness to the opposing party." *Doe v. Dordoni*, No. 1:16-CV-00074, 2016 U.S. Dist. LEXIS 115475, at *6-7 (W.D. Ky. Aug. 29, 2016). The Sixth Circuit has held:

> Several considerations determine whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. They include: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiff to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Porter*, 370 F.3d at 560 (quoting *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)). Additionally, courts "consider whether the defendants are being forced to proceed with insufficient information to present their arguments against the plaintiff's case." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005).

Plaintiff presents no arguments in support of his motion to proceed anonymously, but the only potentially pertinent factor of those set forth above is that the pleadings could be construed as containing information "of the utmost intimacy." The Court finds that this single factor is not sufficient to allow Plaintiff to proceed anonymously because it does not outweigh the "the strong public policy in favor of public access to judicial proceedings." *Does v. Shalushi*, No. 10-11837, 2010 U.S. Dist. LEXIS 77331, at *5 (E.D. Mich. Jul. 30, 2010). Indeed, "where a motion to proceed anonymously has been granted, courts have generally found further purpose for protecting the plaintiff's identity" than this factor alone. *K.R.B. v. Elizabethtown Indep. School Dist.*, No. 3:17-CV-00605, 2017 U.S. Dist. LEXIS 226548, at *3 (W.D. Ky. Dec. 7, 2017) (concluding that although the plaintiffs allege that they were victims of a child pornography scheme, since they had "chosen to file a civil complaint for [monetary] damages as adults," they should be required to identify themselves). Moreover, to the extent Plaintiff's motion is based upon a fear of retaliation, the risk must not merely be hypothetical but based upon real evidence. "A plaintiff can support his fear by demonstrating the need for anonymity to prevent retaliation, the reasonableness of the plaintiff's fear, the severity of the threatened harm, and the plaintiff's vulnerability." *Doe v. Snyder*, No. 12-11194, 2012 U.S. Dist. LEXIS 54492, at *5 (E.D. Mich. Apr. 18, 2012) (quoting *Does* v. *Shalushi*, 2010 U.S. Dist. LEXIS 77331, at *3). Plaintiff's motion contains no information which speaks to any of these factors.

Thus, because Plaintiff has failed to show that his anonymity "substantially outweighs the presumption of open judicial proceedings," **IT IS HEREBY ORDERED** that his motion to proceed anonymously (DN 10) is **DENIED**.

### IV. § 1915 SCREENING

### A. SUMMARY OF PLEADINGS

Plaintiff is incarcerated at the Henderson County Detention Center. Plaintiff initiated this action by filing an 18-page handwritten complaint (DN 1) and a 14-page handwritten attachment (DN 1-1). He names as Defendants MG Freesites, LTD, doing business as Pornhub.com, and Mindgeek, USA, Inc. He also lists as Defendants nine individuals as well as "John Does" and "Jane Does."

Plaintiff writes as follows in the complaint:

18 U.S.C.S. § 1595 FOSTA, Section 1595(a) Claim

Defendants 1) Knowingly benefited financially or by receiving anything of value 2) from participation in a venture 3) it knew or should have known engaged in sex trafficking under section 1991. . . .

Also several TORT claims: 1. Negligent Infliction of Emotional Distress 2. Invasion of Privacy 3. Gang cyber-stalking and cyber-bullying 4. Assault and Battery 5. Defamation by Slander and Libel 6. Gross Negligence 7. Negligent Supervision 8. Negligent Training 9. Civil Conspiracy

Pornhub is in violation of the Trafficking Victims Reauthorization Act (TVPRA) 18 § 1591 and 1595 based on Pornhub knew or was in reckless disregard of the fact that through monetization and providing, obtaining and maintaining sexual abuse material on its platform. Should have known that it was benefiting and supporting of facilitating violation of 1591.

Pornhub exposed me [] to various diseases, shock, pain, and suffering, mental anguish, embarrassment, humiliation, brain damage, and defamation. By allowing a group of sexual sadist to post thousands of videos of my ex-wife (then current-fiance []), who also might be going by the alias [] for Pornhub purposes with hundreds of different sex partners having unprotected sex. They posted thousands of videos within a short few weeks, Oct. 25 – Nov. 19. I first saw videos the day before Halloween '21.

> This is going to sound like an episode of the "Twilight Zone." My mind and my heart was preyed upon as soon as I got out of prison Feb 28th 2021. I was gang cyber-stalked and bullied from May to November. If I overdosed from the ketamine they was slipping me or committed suicide as they planned for Halloween of '21 this would never had been known. A lot of the videos should be titled to humiliate me such as "Quickie before she goes home to her BF," "F—king my best friend wife!" I believe she is going by [] because I looked her up on Truthfinder and it showed she has a sister which she does not. Also came across a KCash account receipt that I learned to be associated with Pornhub. I feel Pornhub is responsible for allowing so many degrading, humiliating, videos directed to me to posted of [] obviously being trafficked for sex. And obviously practicing sexual sadism. Hardly any of the videos show their faces which [should] have been a red flag. They would allow the same people to use different videomaker names, they would post 10-11 videos per videomaker. [] suffers from several mental disorders such as Borderline Personality Disorder, BiPolar Disorder, ADHD, and Depression. I believe she is a pedophile and suffers from sexual sadism. I don't believe she can control her sexual urges or fantasies and I believe [certain individual Defendants] took advantage of her mental illness and drug addiction. Together they devised a plan to control my mind, humiliate me, ruin my life, and force me to commit suicide. Pornhub should have notified authorities after seeing her have unprotected sex with so many different people, not showing their faces and she looks unconscious.

Plaintiff claims that these allegations also show that Defendants violated his rights under 42 U.S.C. § 1983.

Plaintiff then provides explicit details of the videos he alleges his ex-wife was in on Pornhub and then names the Defendants he alleges recorded his ex-wife and "set up a lot of her sex encounters." Plaintiff alleges that these Defendants provided her drugs in exchange for sex. He continues:

> Seeing the love of my life get sexually abused in every way possible with countless amount of dudes including most of my friends has been devastating. Has brought me to my knees, was such a blow to my brain that it caused me to go into a mental psychosis. The pain and humiliation did cause to want to end my life and die.
>
> Pornhub failed to take adequate steps to prevent its occurrence. . . . Pornhub allowed obvious sexual sadism trafficking. . . . They were held to know obvious sex trafficking was going one based on different dudes entering and leaving the room, amount of towels needs, and they paid in cash. Pornhub allowed these sadistic predators to use their platform to allow my ex-wife [] to be trafficked for

> sex, spread diseases, and raped from what I seen along ALONG with torturing my mind, my heart, my emotions, and my spirit. Only GOD has kept me afloat.
>
> Pornhub has structured its website to facilitate sex trafficking . . . . Pornhub requires verification but allows the actors to hide their faces, wear masks (sadism), edit out potential identifying marks. Allow the same person to use different videomaker names. And I also believe allow phone identification and credentials.
>
> In Kentucky, every individual has a universal duty of care that imposes on each person "a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." []. This group of sex sadists cause Intentional Infliction of Emotional Distress. []. I was in what I thought was monogamous relationships with [] and with []. . . . This is the most sophisticated pure evil case of cyber-stalking and cyber-bullying, mind control case ever imaginable. I will provide events that happened to drive me crazy, plant seeds, things to humiliate me, and separately, along with titles and videomakers on Pornhub. On TikTok and in person, they would tell stories about a cat or they would make "meow" sounds. Subliminal cat references. I was completely lost for a while. I would stumble around and felt like my feet had bricks on them. Just became aware that these are effects of Ketamine . . . .

Plaintiff next alleges that his ex-fiancee and ex-wife would "get together and assassinate him on Roblox." He also alleges that they "clowned" him on TikTok. He states that "unknown to him, [] was a prostitute and apparently heavy into BDSM." He states that both women were "with the police" including the Evansville Sheriff's Department and a "Fed." He continues:

> There are tons of instances that she would be wearing something on Pornhub just so I would know it was her. They would rarely show her face but I know it was her by her long black hair, the title, the name of the videomaker or the outfits should would be wearing. Also when I would have sex with them, they would intentionally try to push their bodily fluids back onto me. Trying to infect me with their diseases which I still have been checked for.
>
> [Both women] had access to my email and every other app I had. On TikTok I would [see] the most depressing suicide promoting videos. They would also send me clips letting me know what's been going on the past few months leading up to Halloween. [] was rubbing my face in her sadism ways, degrading me, humiliating me and attempting to control my mind. I seen [her] naked body showing on the reflection of [] (my best friend) T.V. . . .
>
> They would steal my phone, record sex acts, post it to Pornhub, then try to give it back. . . .

7

> There is a [illegible] with a video portraying me to be a child molester, thief, woman beater, amongst other things. There are a lot of people involved, to what extent I don't know. It is hard to investigate from a jail cell, which they also set up. This is just the tip of the iceberg of the torture I endured for better than 6 months I was out.
>
> . . . .
>
> This group of people potentially going by the name "Muatang gang" devised a deviant plan to belittle, degrade, humiliate, frighten, infect me with diseases, confuse me, destroy my mind, my confidence, my trust, but their single plan of action was to force me to commit suicide.
>
> I allege that 1) a single plan consisted 2) the conspirators shared an objective to deprive me of my constitutional rights 3) an overact was committed.
>
> . . . .
>
> I would guess the damages to my brain is extensive. The Ketamine that was unknowingly gave to me on top of the trauma. Seeing the love of my life in thousands of Pornhub videos drove me into mental psychosis which lasted for weeks. I would love to get a CT Scan and talk to a psych doctor. . . .
>
> This whole ordeal consumes my mind. Humiliation, Defamation, Embarrassment, Shock, Pain and Suffering. I will never trust another soul. I will always feel like people are talking out me or being subliminal. Feel like I have to figure riddles out. Mental Anguish. Loneliness. Depression. Brain Damage.

The attachment to the complaint continues in the same vein as the complaint with even more explicit sexual allegations. Plaintiff then alleges that "this group devised a plan to have some sort of mind control over me and they laid out a plan to destroy me and force me to commit suicide."

In the amended complaint (DN 8), Plaintiff names a car insurance company as a Defendant, make additional explicit sexual allegations, and states that he would like to add the following "claims" to this action – torture, betrayal, loathsome disease, forced isolation, outrageous conduct, serious sexual misconduct, psychological distress, attempt forced suicide by shame, anxiety, indignity, and trauma.

### B.  LEGAL STANDARD

Because Plaintiff is proceeding *in forma pauperis*, the Court must review this action pursuant to 28 U.S.C. § 1915(e).  Upon review under § 1915(e), a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### C. ANALYSIS

#### 1. Federal Anti-Trafficking Statutes

Section 1595 of The Trafficking Victims Protection Reauthorization Act (TVPRA) "provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking ("direct liability") or those who knowingly benefit financially from trafficking ("beneficiary liability")." *Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 176833, at *12 (C.D. Cal. Sept. 3, 2021) (citing 18 U.S.C. § 1595). The "Allow States to Fight Online Sex Trafficking Act" of 2018 (FOSTA) exempts certain provisions of the TRVPA from the immunity provided by Section 230 of the Communications Decency Act which "affords Interactive Computer Service Providers broad immunity from liability for content posted [to] their websites by third parties." *Id*. at *10-12 (citing 47 U.S.C. § 230(e)(5)(A)).

Upon consideration, the Court concludes that Plaintiff has no private cause of action under these statutes because he does not allege that *he* was a victim of human trafficking. *See Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736–37 (11th Cir. 2018) ("Although 18 U.S.C. § 1595 . . . provides a civil remedy for violations of the Trafficking Victims Protection Act, Brown failed to allege any facts suggesting that the defendants subjected him to human trafficking, peonage, or the like."); *Brown v. City of Phila. Off. of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (same).

Thus, Plaintiff's claims brought under these statutes will be dismissed for failure to state a claim upon which relief may be granted.

#### 2. 42 U.S.C. § 1983

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S.

635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff's § 1983 claims must be dismissed for failure to state a claim upon which relief may be granted because he has not alleged that any constitutional violation was committed by a person acting under color of state law.

### 3. State-Law Claims

As to Plaintiff's remaining state-law claims, the Court concludes that it lacks subject-matter jurisdiction over them because there is not complete diversity of citizenship since it is evident from the complaint that Plaintiff and at least some of the Defendants are citizens of Kentucky. *See* 28 U.S.C. § 1332. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, Plaintiff's state-law claims will be dismissed without prejudice.

### D. CONCLUSION

The Court will enter a separate Order dismissing this action for the reasons set forth above.

Date: May 4, 2022

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

cc: Plaintiff, *pro se*
    Defendants
4414.011